UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PARISH GOLDEN,

                Plaintiff,

v.

MICHAEL BAENEN, GARY HAMBLIN,
JEANANNE ZWIERS,
C.O. II BRANDENBERG, and T. HUCK,

                Defendants.

Case No. 12-CV-1270-JPS

ORDER

      Parish Golden, a prisoner, filed his complaint in this matter on December 12, 2012. (Docket #1). In it, he asserts 42 U.S.C. § 1983 claims against various defendants involved in the State of Wisconsin's prison system. (Docket #1). The defendants filed a motion to dismiss certain of those claims and the corresponding defendants. (Docket #24). That motion is now fully briefed, and the court renders its decision. (Docket #25, #30, #33).

1.     Claims and Background

      Mr. Golden has sued the following defendants: Michael Baenen, the warden of Green Bay Correctional Institution ("GBCI"); Gary Hamblin, the secretary of Wisconsin's Department of Corrections ("DOC"); Jeananne Zwiers, the health services manager at GBCI; C.O. II Brandenberg, a correctional officer at GBCI who allegedly provided Mr. Golden with incorrect medications; and T. Huck, a mailroom employee at GBCI, who allegedly sent out Mr. Golden's mail in the wrong format. (Compl. ¶¶ 9–13).

      There are three remaining claims in this matter,[1] the first of which Mr. Golden asserts against Baenen, Hamblin, Zwiers, and Brandenberg, and the latter two of which he asserts only against Huck.

---

[1] At screening, the Court dismissed Mr. Golden's second claim, which alleged a negligence claim against Bradenberg. (Compl. ¶ 96(b); Docket #18, at 4).

Mr. Golden's first claim is an Eighth Amendment inadequate medical care claim against defendants Baenen, Hamblin, Zwiers, and Brandenberg (every defendant with the exception of T. Huck). (*See* Compl. ¶¶ 15–70). This first claim actually has two separate parts.

The first part of the first claim stems from Mr. Golden's allegation that Brandenberg accidentally provided Mr. Golden with an incorrect medication. (Compl. ¶ 19). Specifically, he alleges that on May 28, 2012, Brandenberg provided him with the wrong pill while she was administering medication to Mr. Golden at his cell. (Compl. ¶ 19). Mr. Golden immediately realized that this was not the correct medication and informed Brandenberg of the mistake, to which Brandenberg responded "my fault." (Compl. ¶¶ 19–22). Mr. Golden returned the pill to Brandenburg, who threw the pill away. (Compl. ¶ 20). To be clear, *Mr. Golden did not take the incorrect medication at this time.*

After this incident, Mr. Golden sent several letters to Baenen and Zwiers informing them of this incident and complaining about the potential problems that arise from Green Bay Correctional Institution's ("GBCI") policy of allowing correctional officers to distribute medications—a policy also in effect in the rest of Wisconsin's prisons. (*See, e.g.*, Compl. ¶¶ 23, 25, 28, 31). Baenen and Zwiers responded to Mr. Golden's letters, noting Mr. Golden's responsibility for knowing his own medications, and refusing to change the policy. (*See, e.g.*, Compl. ¶¶ 24, 26).

Mr. Golden's complaint identifies his issues with both the actions of Brandenberg in providing the incorrect medication and with the broader policy of GBCI and the DOC to allow correctional officers to administer medication. (*See* Compl. ¶¶ 15–70). In this regard, he seeks an injunction requiring the DOC to change its medication delivery practice (Compl.

¶ 136–137), a declaration that the defendants' actions are unconstitutional (Compl. ¶ 139), and nominal damages against Brandenberg for her delivery of the wrong medication (Compl. ¶ 141).

The second part of Mr. Golden's first claim identifies a separate situation in which he was prescribed a medicated shampoo; the prison ordered the shampoo, but delivery took several days, during which time Mr. Golden's symptoms allegedly worsened. (Compl. ¶¶ 79–83). Mr. Golden complains that this occurrence was due to GBCI's prescription ordering system, propagated by Baenen, Hamblin, and Zwiers, which he alleges is outdated and unduly slow. (Compl. ¶¶ 84–96(a)). He asserts that these issues result in serious risk of harm to inmates through the exacerbation of symptoms and unnecessary pain and suffering, and requests the issuance of an injunction requiring the DOC to change its prescription ordering practices. (Compl. ¶¶ 90, 136).

Mr. Golden's second and third remaining claims both relate to interference with his mail and are both asserted only against Huck. (Compl. ¶¶ 97–130). The second claim is an interference with mail claim, in which Mr. Golden points out that Huck incorrectly sent out a letter from Mr. Golden as non-certified when it should have been sent out certified. (Compl. ¶¶ 97–115). The third claim is a retaliation claim, in which Mr. Golden asserts that Huck again interfered with Mr. Golden's mail, but did so due to Mr. Golden's having filed a complaint against Huck. (Compl. ¶¶ 116–130). Mr. Golden seeks an injunction against Huck's actions, as well as nominal and punitive damages against him, as a result of these alleged actions. (Compl. ¶¶ 138, 142, 143).

2. Discussion

The defendants have moved to dismiss Mr. Golden's Eighth Amendment claim against Baenen, Hamblin, Zwiers, and Brandenberg. (Docket #24). They focus their motion solely upon that claim, and do not address the First Amendment and retaliation claims against Huck. (Docket #25, at 1).

The Court should dismiss the claim only if it determines that, taking all of Mr. Golden's factual allegations to be true, the allegations in the complaint are not sufficient to show that Mr. Golden's Eighth Amendment claim is facially plausible. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Furthermore, because Mr. Golden is proceeding *pro se*, the Court must construe his complaint liberally in evaluating both its substantive claims and its allegations of standing. *Gould v. Schneider*, 448 Fed. Appx. 615, 618 (7th Cir. 2011) (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Obriecht v. Raemisch*, 517 F.3d 489, 492 n. 2 (7th Cir. 2008); *Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir.1998)).

As already discussed, Mr. Golden requests nominal damages, an injunction, and declaratory relief as redress for his Eighth Amendment claim. The defendants argue that the Court: (1) cannot award the nominal damages for the alleged "past injury" because Mr. Golden did not suffer a sufficiently serious injury from receiving the wrong medicine (Docket #25, at 3–4); and (2) that Mr. Golden lacks standing to pursue injunctive and declaratory relief because he cannot show any likelihood that he will suffer some injury as a

result of the state's policy (Docket #25, at 4–6 (citing, among other sources, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983))).

Interpreting Mr. Golden's complaint liberally, as the Court must, it is obliged to disagree with both of the defendants' arguments and to accordingly deny their motion to dismiss.

On the nominal damages/"past injury" claim, the Court finds that Mr. Golden's complaint adequately alleges serious injury, and thus may escape the defendants' motion to dismiss. The defendants are correct that Mr. Golden has not clearly stated any allegations that he was harmed through ingesting an incorrect medicine. However, contrary to the state's assertions, Mr. Golden *has* alleged that he was given incorrect medications on multiple occasions and that his symptoms grew worse after the delay in obtaining his medicated shampoo. (Compl. ¶¶ 35, 79–83).

Construing his complaint liberally, and further construing all allegations in Mr. Golden's favor, the Court must find that these allegations are sufficient to escape dismissal at this stage. If Mr. Golden had received incorrect medications on multiple past occasions, it is conceivable that he may have ingested an incorrect medication unknowingly. If Mr. Golden can establish that he did, indeed, ingest an incorrect medication unknowingly, which in turn caused him harm, then he may prevail on this portion of his claim. Thus, dismissal of that claim would be inappropriate at this stage. Similarly, if Mr. Golden is, in fact, correct that his prescription medication was unduly delayed, causing him further injury, then he may prevail on that aspect of his claim for nominal damages. Therefore, the Court must deny the defendants' motion to dismiss with respect to Mr. Golden's Eighth Amendment claims for past injury/nominal damages.

Page 5 of 7

Case 2:12-cv-01270-JPS    Filed 07/17/13    Page 5 of 7    Document 35

Likewise, the Court must also deny the defendants' motion to dismiss Mr. Golden's claims seeking injunctive and declaratory relief. In this regard, the defendants make a standing argument: that, because Mr. Golden is not likely to suffer any injury as a result of the DOC medication administration or prescription ordering policies, he lacks standing to seek injunctive relief under *Lyons*, 461 U.S. at 102. (Docket #25, at 4–5; #33, at 3). At first glance, Mr. Golden's potential for injuries does seem to be of the speculative nature that the *Lyons* court found could not support standing. Here, however, after evaluating the situation as a whole, the Court concludes that Mr. Golden presents a very high potential that he will be harmed in both a real and immediate sense. Thus, the Court is obliged to find that these circumstances provide Mr. Golden with the requisite standing under *Lyons*. 461 U.S. at 102. Mr. Golden is a prisoner subject to the complained-of policies every day. Every time that he receives a medication—which, for many medications is at least once per day—he faces the possibility that he will be given the wrong medicine by an untrained correctional officer. Mr. Golden may, indeed, be very vigilant, as the defendants assure us. And, that may reduce his risk of taking the wrong medication. But, Mr. Golden (just like the administering correctional officers) is totally untrained, and thus arguably faces a much higher possibility of ingesting the wrong medication than he would if the administration were performed by trained professionals. Similarly, if Mr. Golden becomes sick (quite likely in a prison setting) and is forced to wait for prescription medication, there is a high likelihood that he will suffer pain and worsened symptoms. These scenarios are very real, occur everyday, and are almost entirely outside of Mr. Golden's control. For all of these reasons, the Court must also deny the defendants' motions to dismiss Mr. Golden's Eighth Amendment claims for injunctive and declaratory relief.

Page 6 of 7

Case 2:12-cv-01270-JPS    Filed 07/17/13    Page 6 of 7    Document 35

3. Conclusion

Having determined that the defendants' arguments both fail, the Court is obliged to deny their motion to dismiss in its entirety. The Court will allow the plaintiff to pursue his Eighth Amendment claims, at least through discovery and dispositive motions. In keeping with the Court's desire to keep this case moving forward, the Court will require that the defendants file an answer to the plaintiff's Eighth Amendment claims not later than fourteen (14) days after the entry of this order. Upon receipt of the defendants' answer, the Court will issue a formal scheduling order establishing the relevant discovery and dispositive motion cutoff dates.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss (Docket #24) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the defendants subject to the plaintiff's Eighth Amendment claims (Baenen, Hamblin, Zwiers, and Brandenberg) file an answer to the plaintiff's Eighth Amendment claims not later than fourteen (14) days after the entry of this order.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge